Matter of Matheson KK. (2018 NY Slip Op 03195)





Matter of Matheson Kk.


2018 NY Slip Op 03195


Decided on May 3, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 3, 2018

525291

[*1]In the Matter of MATHESON KK. ULSTER COUNTY DISTRICT ATTORNEY, Respondent; MATHESON KK., Appellant.

Calendar Date: March 26, 2018

Before: McCarthy, J.P., Devine, Mulvey, Aarons and Pritzker, JJ.


Michael Neville, Mental Hygiene Legal Service, Mineola (Laura Rothschild of counsel), for appellant.
D. Holley Carnright, District Attorney, Kingston (Emmanuel Nneji of counsel), for respondent.


Mulvey, J.

MEMORANDUM AND ORDER
Appeal, by permission, from an order of the County Court of Ulster County (Williams, J.), entered October 4, 2017, which, in a proceeding pursuant to CPL 330.20, found that respondent has a dangerous mental disorder and committed him to the custody of the Commissioner of Mental Health.
In August 2015, respondent was charged by indictment with three counts of assault in the second degree and one count of assault in the third degree. He subsequently entered a plea of not responsible by reason of mental disease or defect (see CPL 220.15 [5]) and, as part of the plea agreement, waived his right to appeal. County Court thereafter ordered that he undergo a
psychiatric examination by two qualified psychiatric examiners to determine whether he had a dangerous mental disorder or whether he was mentally ill (see CPL 330.20 [1] [e]; [2]). In their respective reports, both examiners concluded that respondent has a dangerous mental disorder requiring inpatient psychiatric care at a secure facility.
At the initial hearing to determine respondent's mental condition, the psychiatric reports were received into evidence without objection by respondent's counsel. Without calling any witnesses or presenting any evidence, respondent's counsel stated that she and her supervisor had reviewed the reports and that "we are not contesting the findings at this time." Based solely upon "the concession by [respondent's] counsel that there is nothing to challenge what is contained [in [*2]the reports] either factually or legally," County Court determined that a preponderance of the evidence established that respondent suffered from a dangerous mental disorder and remanded him to the custody of the Commissioner of Mental Health for confinement in a secure facility for an initial period of six months. This Court granted respondent's subsequent motion for leave to appeal.
Respondent's chief claim on this appeal is that he was deprived of the effective assistance of counsel during the initial commitment hearing. Initially, we reject petitioner's contention that the waiver of appeal executed in connection with the plea agreement precludes respondent's argument in this regard. During the plea colloquy, respondent was not informed by County Court that the waiver of appeal had any application to the distinct, postplea civil commitment proceedings that would follow his plea of not responsible by reason of mental disease or defect (cf. People v Leflore, 154 AD3d 1164, 1164-1165 [2017], lv denied 30 NY3d 1106 [2018]; see generally Matter of Lockett v Juviler, 65 NY2d 182, 184 [1985] [explaining that a plea of not responsible by reason of mental disease or defect "terminates the criminal proceeding and initiates commitment proceedings of a civil nature"]). Nor did the written waiver of appeal expressly include any aspect of the effectiveness of counsel at any point following the entry of the plea. Quite to the contrary, the written waiver specified that respondent was waiving his right to appeal "any issues regarding the effectiveness of [counsel] prior to [his] plea in this case" (emphasis added). Under these circumstances, we find that neither the oral waiver nor the written waiver precludes our consideration of respondent's claim of ineffectiveness relating to the postplea initial commitment hearing.
Turning to the merits of respondent's appeal, CPL 330.20 requires County Court to conduct an initial hearing within 10 days after receipt of psychiatric examination reports for the purpose of assigning an insanity acquittee to one of three "tracks" based upon his or her present mental condition (see Matter of Allen B. v Sproat, 23 NY3d 364, 368 [2014]; Matter of Norman D., 3 NY3d 150, 154 [2004]). "Track-one [acquittees] are those found by the trial judge to suffer from a dangerous mental disorder; i.e., a mental illness that makes them a physical danger to themselves or others. Track-two [acquittees] are mentally ill, but not dangerous, while track-three [acquittees] are neither dangerous nor mentally ill" (Matter of Allen B. v Sproat, 23 NY3d at 368 [internal quotation marks and citation omitted]; see People v Stone, 73 NY2d 296, 300 [1989]; People v Darryl T., ___ AD3d ___, ___, 2018 NY Slip Op 02280, *4 [2018]). County Court's finding in this case placed respondent in track one, a status "significantly more restrictive than track two" (Matter of Norman D., 3 NY3d at 155; accord People v Darryl T., 2018 NY Slip Op 02280 at *5). "Track status, as determined by the initial commitment order, governs the acquittee's level of supervision in future proceedings and may be overturned only on appeal from that order, not by means of a rehearing and review" (Matter of Norman D., 3 NY3d at 152; accord Matter of Allen B. v Sproat, 23 NY3d at 368). Given the "vital[] importanc[e]" of track designation (Matter of Norman D., 3 NY3d at 154), the initial commitment hearing was plainly "a critical stage of the proceedings during which respondent was entitled to the effective assistance of counsel, [requiring us to] consider whether counsel's performance therein viewed in totality amounted to meaningful representation" (Matter of Brian HH., 39 AD3d 1007, 1009 [2007] [internal quotation marks, brackets and citations omitted]; see People v Darryl T., 2018 NY Slip Op 02280 at *5). We agree with respondent that counsel's performance fell short of that standard.
By affirmatively stating at the initial hearing that she "was not contesting any findings" contained within the psychiatric reports, respondent's counsel conceded that respondent had a dangerous mental disorder and, thus, implicitly consented to his confinement in a secure facility. Counsel did not call any witnesses or seek to cross-examine the psychiatrists who prepared the [*3]reports (compare Matter of Eric U., 40 AD3d 1148, 1151 [2007], lv denied 9 NY3d 809 [2007]), nor did counsel consult an expert on respondent's behalf who may have offered a contrasting opinion as to his mental status or, at the very least, could have clinically assessed the examination reports and the approaches taken in reaching their ultimate conclusions (compare People v Odell B.-P., 154 AD3d 534, 535 [2017], lv denied 30 NY3d 912 [2018]). Despite petitioner's protestations to the contrary, there is no basis in this record to conclude that pursuit of any of these avenues — particularly cross-examination of the psychiatric examiners — would have been futile or otherwise destined for failure (see Matter of Brian HH., 39 AD3d at 1010; see generally People v Caban, 5 NY3d 143, 152 [2005]; People v Stultz, 2 NY3d 277, 287 [2004]). Under these circumstances, we are simply unable to discern any plausible strategy or legitimate explanation for counsel's decision to completely acquiesce to the most severe track classification (see People v Darryl T., 2018 NY Slip Op 02280 at *5-6; Matter of Brian HH., 39 AD3d at 1009-1010; compare People v Odell B.-P., 154 AD3d at 535; Matter of Eric U., 40 AD3d at 1151). For these reasons, we conclude that respondent was denied meaningful representation at the initial hearing. Accordingly, the order must be reversed and the matter remitted for a new hearing.
The remaining contentions, to the extent that they are not rendered academic by our determination, are without merit.
McCarthy, J.P., Devine, Aarons and Pritzker, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, and matter remitted to the County Court of Ulster County for further proceedings not inconsistent with this Court's decision.